## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RICKY HERNANDEZ, on behalf of himself
and all others similarly situated,

                         Plaintiff,

- against -

WTS INTERNATIONAL, LLC d/b/a ARCH
AMENITIES GROUP,

                         Defendant.

Civil Action No.

**CLASS ACTION AND COLLECTIVE
ACTION COMPLAINT**

Plaintiff Ricky Hernandez ("Plaintiff" or "Hernandez") on behalf of himself and all others similarly situated, by and through his undersigned attorneys, the Law Offices of Mitchell Schley, LLC, brings this class and collective action against WTS International, LLC d/b/a Arch Amenities Group ("Arch" or "Defendant") and alleges upon actual knowledge as to himself and, as to all other matters, alleges upon information and belief, as follows:

### NATURE OF ACTION

1.      Plaintiff brings this action on behalf of himself and all other similarly situated employees seeking declaratory and injunctive relief and to recover unpaid wages, liquidated damages, statutory damages, pre-judgment and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and New York Labor Law ("NYLL") as amended by the New York Wage Theft Prevention Act. This class action arises out of Defendant's failure to pay proper overtime wages pursuant to the FLSA and NYLL. It also arises out of Defendant's violations of NYLL, including NYLL § 196-d, by retaining a portion of the service charge assessed to its customers that is legally required to be paid to its

employees, NYLL § 191 by failing to pay the compensation promised to the employees, and NYLL 191(a)(i) by violating the pay frequency requirement. A breach of contract claim is alleged, as well.

2.      Unless otherwise indicated, all references herein to Plaintiff include employees similarly situated.

3.      All references herein to the FLSA include its supporting USDOL Regulations.

4.      All references herein to the NYLL include its supporting NYDOL Regulations.

## JURISDICTION

5.      This Court has original subject matter jurisdiction in this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337 and has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

6.      In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between the citizens of different States. In this regard, Plaintiff is due unpaid wages and compensation, liquidated damages, statutory damages, and attorney's fees and costs that exceed the sum of $75,000.

7.      Here, complete diversity exists between the Plaintiff and Defendant. Plaintiff has been and is a resident of New York. Defendant Arch Amenities Group is a Washington, D.C. limited liability company with its principal place of business located at 3200 Tower Oaks Blvd., Suite 400, Rockville, Maryland 20852.

## VENUE

8.      Venue in this district pursuant to 28 U.S.C. 1391(b)(2) is proper in that Defendant has maintained a New York office location in this judicial district at 360 Lexington Ave., 10th

Floor, New York, New York 10017. Further, Defendant does business at numerous locations in this judicial district. The owner of Arch Amenities Group, CI Capital Partners LLC, has its principal place of business in this judicial district at 500 Park Ave., 8th Floor, New York, New York 10022. In addition, while employed by Defendant, Plaintiff resided in this judicial district.

## THE PARTIES

**Plaintiff Ricky Hernandez**

9.      Plaintiff is a resident of New York.

10.     Plaintiff is a licensed massage therapist.

11.     Plaintiff was employed by Defendant from on or about September 19, 2023, to or about September 4, 2024, in the position of massage therapist.

12.     At all relevant times, Plaintiff has been an employee engaged in commerce and/or the production of goods for commerce on behalf of Arch, within the meaning of the FLSA.

13.     Arch suffered or permitted Plaintiff to work in exchange for wages. During these periods, and at all relevant times, Plaintiff had an employment relationship with and was an employee of Arch within the meaning of the FLSA, 29 U.S.C. §203(e)(1), (g), and NYLL § 190.2.

14.     Plaintiff was a manual worker for Defendant within the meaning of NYLL § 190.4.

15.     Plaintiff has consented to be a party to the FLSA claims in this action pursuant to 29 U.S.C. §216(b). His written consent is filed as **Exhibit A** to this Complaint.

**Defendant WTS International, LLC d/b/a Arch Amenities Group**

16.     Defendant has accurately described itself on the internet as follows: "Arch Amenities Group, based in Rockville, Maryland, is a leading provider of amenity management, hospitality consulting, and recruiting services for commercial and residential properties, hotels, spas, private clubs, and pools. Arch provides preopening and sustaining strategy and support for

leading wellness and amenity spaces in the United States and across the globe. Arch is a portfolio company of private equity firm CI Capital Partners."

17.    Arch operates in about 35 states in the U.S.

18.    Arch issued paychecks to Plaintiff in 2023 and 2024.

19.    In or about May 2023, Arch announced and introduced "Wage Insights," a tool that provides salary and wage benchmarking data for hotels and wellness centers.

20.    Arch has been at all relevant times a Washington D.C. limited liability corporation.

21.    At all relevant times, Arch employees have handled goods that have been moved in or produced in interstate commerce. Arch has been at all relevant times an employer engaged in interstate commerce and/or production of goods for commerce with a gross annual revenue in excess of $500,000, within the meaning of the FLSA.

22.    Arch has been at all relevant times an employer within the meaning of the FLSA § § 203(d) and 207(a).

23.    Arch has been at all relevant times an employer within the meaning of the NYLL § 190.3.

24.    On or about October 31, 2019, CI Capital Partners LLC, a private equity firm, acquired Arch Amenities Group.

**COLLECTIVE ALLEGATIONS**

25.    Plaintiff brings the First Claim as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b) on behalf of himself and those similarly situated employees, which shall include:

> All non-exempt employees, including, but not limited to, massage therapists, estheticians, and personal trainers, who have worked for Arch Amenities Group at any hotel, resort, spa, fitness center, wellness center, private club, residential or commercial property, or any other facility or property in New York State beginning three

years prior to the filing of this action through entry of judgment in this matter (the Collective Action Liability Period.)

26.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and failing to pay Plaintiff and those similarly situated proper overtime pay at one-and-a-half times their regular hourly rate for all hours worked in excess of 40 hours in a workweek within the meaning of the FLSA. 29 U.S.C. § 207. This includes **a)** to the extent any payment designated as overtime pay was made, failing to calculate overtime pay due based on a seven-day workweek as required by the FLSA, 29 C.F.R. § 778.100 – 110; and **b)** failing to properly calculate the regular hourly rate for the purpose of paying the correct overtime wages.

27.     Plaintiff and those similarly situated have had the same terms or similar conditions of employment as it relates to the FLSA. There are likely over 40 similarly situated current and former employees of the Defendant in the positions above who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to the Defendant, are readily identifiable, and can be located through Defendant's records that they are required to create and maintain pursuant to the FLSA and NYLL. Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

28.     Defendant knew at all relevant times that the FLSA required it to pay proper and full overtime wages in accordance with the law, but it chose not to do so.

29.     Defendant's violations of the FLSA described above have been knowing, intentional, and willful or in reckless disregard of its legal obligations and, therefore, a three-year statute of limitations applies to this matter pursuant to the FLSA, 29 U.S.C. § 255(a).

30.     Defendant acted in bad faith and unreasonably by denying Plaintiff overtime pay. Defendant is liable for liquidated damages pursuant to the FLSA, 29 U.S.C. § 216(b), in an additional equal amount to the damages for the unpaid wages. 29 U.S.C. § 260.

## RULE 23 CLASS ACTION ALLEGATIONS

31.     Plaintiff brings the Second through Sixth Claims as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class, consisting of:

> All non-exempt employees, including, but not limited to, massage therapists, estheticians, and personal trainers, who have worked for WTS International, LLC d/b/a Arch Amenities Group at any hotel, resort, spa, fitness center, wellness center, private club, residential or commercial property, or any other facility or property in New York State beginning six years prior to the filing of this action through entry of judgment in this matter (the Rule 23 Class Liability Period.)

32.     The persons in the Rule 23 Class are so numerous that the joinder of all members is impracticable. The exact number of the Rule 23 Class members is unknown to Plaintiff at this time, but there are believed to be over 40 such persons. The identity of the Rule 23 Class Members is known to the Defendant and is contained in the employment records that the Defendant is required to create and maintain pursuant to the FLSA and NYLL.

33.     Plaintiff's claims are typical of the claims of the other members of the Rule 23 Class as Plaintiff and all other members of the Rule 23 Class sustained damages arising out of Defendant's conduct in violation of the New York State laws complained of herein and were subjected to the same or similar terms and conditions of employment. The Rule 23 Class members work or have worked for the Defendant in New York State and were not paid proper and full overtime wages by the Defendant in violation of the NYLL, and were subjected to other violations of the NYLL as set forth herein. They have sustained similar types of damages as a result of Defendant's failure to comply with the NYLL and supporting regulations.

34.    Plaintiff will fairly and adequately protect the interests of the members of the Rule 23 Class and has retained counsel competent and experienced in complex class action litigation.

35.    Plaintiff has no interests that are contrary to or in conflict with those of the other members of the Rule 23 Class.

36.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

37.    Common questions of law and fact exist as to all members of the Rule 23 Class and predominate over any questions affecting solely individual members. Among the questions of law and fact common to the Rule 23 Class with respect to the NYLL, are:

a.    Whether the NYLL and the supporting regulations were violated by Defendant's acts as alleged herein;

b.    Whether Defendant failed to pay full and proper overtime wages at 1.5 the regular hourly wage rate to Plaintiff and Rule 23 Class members for all time worked in excess of 40 hours in a seven-day workweek;

c.    Whether Defendant failed to calculate overtime hours worked on the basis of a seven-day workweek period;

d.    Whether Defendant failed to calculate overtime pay on the basis of the full regular rate, including commission pay and service charge pay;

e.    Whether Defendant failed to pay employees on a timely basis;

f.    Whether Defendant unlawfully retained a portion of the service charge billed to each customer;

g.    Whether Defendant failed to pay employees the amount it promised them when they were hired or otherwise;

h.  Whether Defendant's failure to pay employees the amount it promised them when hired or otherwise constituted a breach of contract; and

i.  Whether Plaintiff and the Rule 23 Class have sustained damages and, if so, the proper measure of such damages.

38.  Defendant has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate relief with respect to the Rule 23 Class as a whole.

39.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since damages suffered by individual Rule 23 Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and Rule 23 Class members to individually seek redress for the wrongful conduct alleged. Individual class members lack the financial resources to conduct a thorough examination of Defendant's compensation practices to vigorously prosecute a lawsuit against the Defendant to recover such damages. Class litigation is superior because it will obviate the need for unduly duplicative litigation.

40.  The prosecution of separate actions by the individual members of the class would create a risk of (a) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of treatment of class members by Defendant; (b) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interest of the other members not parties to the adjudications; and (c) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate relief with respect to the class as a whole.

## FACTUAL ALLEGATIONS

41.     Arch Amenities Group is, among other things, a nationwide provider of amenities services in the hospitality industry.

42.     Arch employs, among others, massage therapists, estheticians, and personal trainers who Arch assigns to work at facilities such as hotels, resorts, spas, private clubs, fitness centers, wellness centers, and other residential or commercial properties.

43.     In New York, the facilities to which Arch assigns employees include, but are not limited to, The Spa at Trump Int'l Hotel & Tower, ILA Only Spa at Lotte New York Palace, Manhattan Plaza Health Club, The Playground at the Seagram Building-New York, 140 Broadway, 1700 Broadway, Spa de La Mer at Baccarat Hotel-New York, Water Tower-540 Madison Avenue, and Bamford Wellness Spa at 1 Hotel.

44.     Plaintiff was assigned by Defendant to work as a massage therapist at the Bamford Wellness Spa at 1 Hotel.

45.     The Bamford Wellness Spa (the "Spa") is on the first level of the 1 Hotel.

46.     The Spa has nine treatment rooms.

47.     The Spa provides various personal treatments such as massages and facials. It also sells skin care products.

48.     The 1 Hotel has engaged Arch to operate its Bamford Wellness Spa.

49.     At the Bamford Spa at 1 Hotel where Plaintiff worked, there is no sign or indication to the customer that the spa services are being provided by someone other than the hotel. There is no reference to Arch. The receipt given to the customer by Defendant states, "Bamford Wellness Spa at 1 Hotel."

50.     Albert Artabaev, Spa Director, has been employed by Arch and has managed the Bamford Wellness Spa and the Arch employees at the Spa.

51.     Plaintiff reported to Albert Artabaev.

52.     Plaintiff was employed by Defendant as a massage therapist from on or about September 19, 2023, to on or about September 4, 2024.

53.     As a massage therapist, Plaintiff provided customers with various types of massages for various lengths of time, which were billed by Arch at different rates.

54.     Plaintiff was given a 55-page Bamford Therapist Manual describing the numerous types of massages and treatments available for the Spa customers.

55.     Plaintiff typically worked on Friday, Saturday, Sunday, and Monday, 10 or more hours per day, and sometimes less.

56.     Plaintiff clocked-in to work at the Spa when he arrived and clocked-out at the conclusion of his work period.

57.     Albert Artabaev, Spa Director, hired Plaintiff, on behalf of Arch.

58.     When Arch hired Plaintiff, Arch, in writing, promised him certain compensation.

59.     The compensation promised to Plaintiff by Arch is set forth in an email dated September 19, 2023, from Albert Artabaev to Plaintiff, which states:

> **Hi Ricky,**
>
> **Out company pays 20% service charge commission plus 20% service commission. You will also get 10% retail commission. Hourly rate is $9 per hour.**

60.     The "service charge commission" also referred to herein as the "service charge" is a charge that appears on the customer bill for service given to each customer for a massage or other services provided by Plaintiff or those similarly situated.

61.     The service charge commission is considered by Defendant to be a tip/gratuity for the massage therapist or other employee service provider. Indeed, as noted above, Defendant considers the service charge commission to be intended for the massage therapist or other employee service provider because, as Plaintiff was advised when hired, the service charge commission billed to the customer, is to be paid to him by Defendant.

62.     It is generally understood by the public that an employee who provides a personal treatment or service is tipped by the customer at any personal amenities' facility or spa. The Arch customer is not asked or expected to tip the massage therapist because the customer recognizes that the service charge, for which it is billed by Defendant for a massage at 22% of the service cost, constitutes the tip.

63.     After customers were finished with their treatment or service, they went to the front desk of the Spa and were presented with a bill. The bill included a 22% service charge.

64.     Although Defendant billed customers a service charge of 22%, the service charge amount that Defendant typically included in Plaintiff's semi-monthly paycheck, referred to as the service charge commission, was 18%, or sometimes less. Thus, Defendant routinely retained 4% of the 22% service charge billed to each customer.

65.     In addition, Defendant promised to pay Plaintiff a 20% service charge commission. But Defendant routinely paid Plaintiff a service charge commission of 18%, which is 2% less than the 20% Plaintiff was promised.

66.      Plaintiff was paid twice a month with a paycheck produced by ADP. The paycheck was accompanied by an "Earnings Statement," also known as a paystub.

67.     The ADP Earnings Statement issued to Plaintiff identifies the payor of the paycheck as "Arch Amenities Group WTS International LLC."

11

68.    The ADP Earnings Statement issued to Plaintiff also states: "Basis of Pay: Hourly."

69.    Plaintiff was paid on an hourly basis.

70.    For each payroll period, Defendant maintained an employee payroll report referred to as "Booker." The report was generated using software provided by Mindbody, Inc., a cloud-based software company that provides business management tools for the health, wellness, and fitness industry.

71.    Defendant's payroll records referred to the service charge commission as "Tips."

72.    Defendant's retention of 4% of the 22% service charge commission, was referred to as 4% for the "House."

73.    The bill/receipt for personal services given to customers at Plaintiff's work location reads as follows:

> Service Total
> Service Charge Total
> Sub Total
> Service Tax
> Total Tax
> Total
> Amount Paid
> Balance Due

74.    Defendant's standard customer bill and receipt do not have a designated line for a "Tip" or "Gratuity." Customers understand that the line designated as a "service charge" constitutes the tip/gratuity which a customer would normally leave for the employee who provided the personal service, such as a massage.

75.    Plaintiff asked Albert Artabaev if he could be regularly provided with the number of hours he was credited for working in a seven-day workweek. Artabaev said Plaintiff could not be provided with that information.

76.     Defendant's failure to provide Plaintiff with the total hours he was credited for working in each seven-day workweek impaired his ability to determine if he was being compensated in accordance with law.

77.     To the extent Defendant paid a premium for overtime work, Plaintiff was not informed on his paystub how Defendant calculated the overtime premium and the regular hourly wage rate used to determine the overtime premium.

78.     Defendant did not issue Plaintiff complete and accurate "Wage Notices" containing the information required by NYLL § 195(1).

79.     Defendant did not issue Plaintiff complete and accurate "Wage Statements" containing the information required by NYLL § 195(3).

## FIRST CLAIM
### (FLSA – Unpaid Overtime Wages)

80.     Plaintiff repeats and incorporates all foregoing paragraphs by reference.

81.     Defendant is an employer within the meaning of 29 U.S.C. 203(d) and 207(a), and employed Plaintiff and the FLSA Collective.

82.     Defendant considered Plaintiff and the FLSA Collective to be hourly paid employees.

83.     According to Defendant, Plaintiff's hourly rate was $9.00.

84.     Defendant considered Plaintiff and the FLSA Collective to be non-exempt within the meaning of the FLSA, and they have non-exempt.

85.     Plaintiff and the FLSA Collective are non-exempt within the meaning of the FLSA.

86.     Defendant was required to pay Plaintiff and the FLSA Collective one and one-half (1½) times their regular hourly wage rate for all hours worked in excess of 40 hours per seven-day workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207 *et seq.*

87.    Defendant failed to pay plaintiff and the FLSA Collective the full and proper overtime wages to which they were entitled under the FLSA.

88.    Defendant willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiff and the FLSA Collective the full and proper overtime wage rate and overtime wages.

89.    Defendant willfully violated the FLSA by calculating total hours worked on a twice a month basis (semi-monthly) rather than on a seven-day workweek basis as mandated by FLSA §7(a), C.F.R. 778.103-105., for the purpose of calculating overtime pay due.

90.    Defendant willfully violated the FLSA by failing to calculate overtime wages based on the full regular hourly wage rate, which should have included service commissions and the full service charge commissions Defendant chose to pay Plaintiff and the FLSA Collective.

91.    Defendant was aware or should have been aware that the practices described in this Complaint were unlawful. Defendant did not have reasonable grounds for believing that its acts or omissions did not violate the FLSA and did not make a good faith effort to comply with the FLSA with respect to Plaintiff's and the FLSA Collective's compensation.

92.    As a result of Defendant's violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, post-judgment interest, and reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (NYLL – Unpaid Overtime Wages)

93.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

94.    Under the NYLL, including 12 N.Y.C.R.R. § 142-2.2, Defendant was required to pay Plaintiff and the Rule 23 Class one and one-half (1 ½) times their regular rates of pay for all hours worked over 40 in a seven-day workweek.

95.    Defendant considered Plaintiff and the Rule 23 Class to be hourly-paid employees.

14

96.     According to Defendant, Plaintiff's hourly rate was $9.00.

97.     Defendant considered Plaintiff and the Rule 23 Class to be non-exempt within the meaning of the NYLL.

98.     Plaintiff and the Rule 23 Class are non-exempt within the meaning of the NYLL.

99.     Defendant was required to pay Plaintiff and the Rule 23 Class one and one-half times their regular hourly wage rate for all hours worked in excess of 40 hours per seven-day workweek pursuant to the overtime wage provisions set forth in the NYLL.

100.    Defendant failed to pay Plaintiff and the Rule 23 Class the full and proper overtime wages to which they were entitled under the NYLL.

101.    Defendant willfully violated the NYLL by failing to pay overtime wages for all workweeks in which Plaintiff and the Rule 23 Class worked more than 40 hours in a seven-day workweek as required by the NYLL.

102.    Defendant willfully violated the NYLL by failing to calculate overtime wages based on the full regular rate, which should have included the service commission and full service charge commission that Defendant billed to and paid by its customers.

103.    Defendant willfully violated the NYLL by calculating total hours worked on a twice a month basis (semi-monthly) rather than on a seven-day workweek basis as required by the NYLL.

104.    Defendant willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff and the Rule 23 Class full and proper overtime wages.

105.    As a result of Defendant's violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL § 663(1).

## THIRD CLAIM
### (NYLL – Frequency of Payments)

106.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

107.    It has been the interpretation of the NYLL, including in published NYDOL Opinion Letters, that employees who spend more than 25% of their working time engaged in physical labor are within the meaning of the term "manual worker" under the NYLL. See NYSDOL Op. Ltr. RO-09-0066 (May 21, 2009) ("It has been this Department's longstanding interpretation of the term 'manual workers' that the term includes employees who spend more than 25 percent of their working time performing physical labor.").

108.    For example, hairdressers have been found to be manual workers by the NYDOL. *See* NYDOL Op. Ltr. RO-08-0061 (Dec. 4, 2008).

109.    Plaintiff and the Rule 23 Class spent more than 25% of their working time performing work tasks that are physical in nature.

110.    Plaintiff and the Rule 23 Class are "manual workers" within the meaning of the NYLL § 190(4) and NYLL § 191(1)(a)(i).

111.    Defendants were required to pay Plaintiff and the Rule 23 Class their wages on a weekly basis and "not later than seven calendar days after the end of the week in which the wages were earned." NYLL § 191(1)(a)(i).

112.    Defendants regularly paid Plaintiff and the Rule 23 Class their wages later than seven calendar days after the end of the week in which the wages were earned in violation of NYLL § 191(1)(a)(i), specifically twice a month (semi-monthly).

113.    Defendant did not have authorization from the New York State Department of Labor Commissioner to pay Plaintiff and the Rule 23 Class on a twice a month basis or less frequently than on a weekly basis.

16

114.    The injury of Plaintiff and the Rule 23 Class, *inter alia*, is their deprivation of the time value of money, which they were owed.

115.    As a result, Plaintiff and the Rule 23 Class are entitled to recover liquidated damages equal to the full amount of the wages paid later than seven days after the end of the seven-day workweek during which the wages were earned, pursuant to NYLL § 198(1-a), as well as reasonable attorney's fees and costs pursuant to the NYLL. *See Espinal v. Sephora USA, Inc.,* 2024 U.S. Dist. LEXIS 206, 346, at \*8 (S.D.N.Y. Nov. 12, 2024); *Karter v. Longevity Health Servs. LLC*, 2024 N.Y. Misc. LEXIS 4573, at \*4 (N.Y. Sup. Ct. July 24, 2024); *Vega v. CM & Assoc. Constr. Mgt., LLC,* 2019 N.Y. App. Div. LEXIS 6464, at \*\*\* 2-5 (1st Dept. 2019).

## FOURTH CLAIM
### (NYLL – Unlawful Service Charge Retention)

116.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

117.    At all relevant times, Defendant has been an employer within the meaning of NYLL §§ 190 *et seq*, and NYLL § 190.3.

118.    Defendant regularly retained a portion of the service charge that was billed to each customer, but which were all due to be paid to Plaintiff and the members of the Rule 23 Class pursuant to the NYLL.

119.    Defendant informed Plaintiff and the Rule 23 Class that the service charge billed and paid by the customer was part of the employee's compensation.

120.    When customers were given a bill for services, they were told by the front desk attendant that the service charge was for the employee service provider, e.g. the massage therapist.

121.    Defendant led customers to believe that the service charge was a gratuity for the employee who provided the service.

122.    A reasonable customer would recognize that a service charge was being collected in lieu of a gratuity.

123.    Defendant did not notify customers that the service charge was not a gratuity and that any part of it would be retained by Defendant.

124.    New York State does not impose a sales tax on personal services such as massages and facials. New York City does impose a 4.5% sales tax on revenue to the business for such personal services.

125.    At Plaintiff's work location, Defendant did not bill the customer for New York City sales tax for the service charge portion of the bill that was to be paid to the employee, thus establishing that the full service charge was to be paid to the employee.

126.    By Defendant's knowing and intentional demand for, acceptance of and/or retention of the gratuities and/or service charges paid by customers for services provided by Plaintiff and Class Members when such customers had a reasonable expectation that such service charge would be paid to Plaintiff and the members of the Rule 23 Class, Defendant willfully violated NYLL § 196-d. *See Samiento v. World Yacht Inc.*, 2008 N.Y. LEXIS 228 (N.Y. 2008).

127.    Due to Defendant's violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendant their unpaid wages, any liquidated damages, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs pursuant to NYLL § 663(1).

**FIFTH CLAIM**
**(NYLL– Failure to Pay Promised Compensation)**

128.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

129.    Under the NYLL § 191, an employee can recover the unpaid portion of promised compensation for time worked. NYLL § 191 mandates the workers be paid in accordance with the

18

agreed terms of employment. NYLL Article 6, §§ 191 and 198(1-a). *See, e.g., Ferreira v. Brooklyn's Constructions & Desings Inc.,* 2024 U.S. Dist. LEXIS 47687, at *25 (E.D.N.Y. March 15, 2024); *Sanchez v. Hyper Structure Corp.*, 2023 U.S. Dist. LEXIS 32450, at *18 (E.D.N.Y. 2023).

130.    When Plaintiff was hired, Defendant, in writing, promised him certain compensation, compromising of "20% service charge commission," "20% service commission," "10% retail commission," and an "hourly rate of $9 per hour."

131.    In violation of NYLL § 191, Defendant regularly failed to pay Plaintiff the full promised "20% service charge commission." Defendant regularly withheld for itself a portion of the "20% service charge commission," typically 2%, that was promised to Plaintiff as part of his semi-monthly paid compensation.

132.    Due to Defendant's violations of the NYLL, Plaintiff and the members of the Rule 23 Class are entitled to recover from Defendant their unpaid wages, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs pursuant to NYLL § 663(1).

### SIXTH CLAIM
### (Breach of Contract)

133.    Plaintiff repeats and incorporates all foregoing paragraphs by reference.

134.    Defendant and Plaintiff entered into a written contract which included Defendant's promise to pay Plaintiff  "20 % service charge commission" in exchange for his performance of his employment duties as a massage therapist for Defendant.

135.    Plaintiff performed his duties under the contract as a massage therapist in 2023 and 2024.

136.    Defendant materially breached its contract with Plaintiff by regularly paying him less than a "20% service charge commission." Typically, Defendant paid Plaintiff an 18% service charge commission.

137.    As a result of Defendant's breach of contract, Plaintiff and those similarly situated have sustained economic damages and are entitled to receive the difference between the amount of payment they would have received under the contract and the amount they actually received, and pre-judgment and post-judgment interest.

PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, prays for the following relief against Defendant:

a.    an order certifying the case as a collective action for the violations of the FLSA, as it pertains to the First Claim under the FLSA, 29 U.S.C. §216(b), for the employees described herein and designating Plaintiff as representative of the FLSA Collective and designating Plaintiff's counsel as the FLSA Collective counsel;

b.    an order certifying the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure as it pertains to the Second through Sixth Claims for the class of employees described herein, designating the Plaintiff as the Class representative and designating Plaintiff's counsel as Class counsel;

c.    certify this case as a collective action on behalf of the FLSA Collective described herein and authorize the prompt issuance of a notice pursuant to 29 U.S.C. § 216(b) to all prospective members of the FLSA Collective apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

d.  declare that Defendant has violated the overtime wage provisions of the FLSA, NYLL, and supporting regulations;

e.  declare that Defendant has violated the pay frequency requirement of the NYLL, and supporting regulations, and order that Defendant pay damages to remedy these violations;

f.  declare that Defendant has violated the Wage Notice and Wage Statement provisions of the NYLL;

g.  declare that Defendant violated the NYLL by retaining a portion of the service charge that was billed to the customer;

h.  declare that Defendant has violated NYLL § 191, which requires that the employer pay to its employees the compensation promised to them;

i.  declare that Defendant breached its contract with Plaintiff and those similarly situated by failing to pay them the contractual compensation promised to them;

j.  declare that Defendant's violations of the FLSA and NYLL were willful;

k.  enjoin and permanently restrain Defendant from further violations of the FLSA and NYLL;

l.  award Plaintiff, the FLSA Collective, and the Rule 23 Class damages for unpaid overtime wages;

m.  award Plaintiff, the FLSA Collective, and the Rule 23 Class, liquidated damages as permitted by the FLSA and the NYLL;

n.  award Plaintiff and the Rule 23 Class permitted damages for Defendant's NYLL pay frequency, breach of promised compensation, and service charge violations;

o.  award Plaintiff and the Rule 23 Class damages for breach of contract;

p.  award Plaintiff and the FLSA Collective post-judgment interest under the FLSA;

q.  award Plaintiff and the Rule 23 Class pre-judgment interest under the NYLL in addition to any liquidated damages awarded under the NYLL or FLSA. *See* NYLL § 663(1); *Reilly v. Nat West Mkts. Grp., Inc.,* 181 F.3d 253, 265 (2d Cir. 1999); *Balderramo v. Go N.Y. Tours, Inc.,* 2023 U.S. LEXIS 57080, \*65 (S.D.N.Y. 2023);

r.  award Plaintiff and the Rule 23 Class post-judgment interest under the NYLL;

s.  award Plaintiff and the Rule 23 Class pre-judgment and post-judgment interest for Defendant's breach of contract;

t.  award Plaintiff, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL;

u.  provide that if a judgment awarding remedies remains unpaid by Defendants upon the expiration of 90 days following the issuance of judgment or time to appeal, the total amount of judgment will be automatically increased by 15 percent. *See* NYLL § 198(4), 663(4); *Balderramo v. Go N.Y. Tours, Inc.,* 2023 U.S. LEXIS 57080, at \*\*67 (S.D.N.Y. 2023); *Sanchez v. Hyper Structure Corp.*, 2023 U.S. Dist. LEXIS 32450, at \*26 (E.D.N.Y. 2023); and

v.  award such other and further relief as the Court deems just and proper.


Dated: December 24, 2024

By:    *s/ Mitchell Schley*
       Mitchell Schley
       Law Offices of Mitchell Schley, LLC
       197 Route 18, Suite 3000
       East Brunswick, New Jersey 08816
       (732) 325-0318
       mschley@schleylaw.com
       *Attorneys for Plaintiff*